# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## CA 23-557

**PATRIOT CONSTRUCTION &**

**INDUSTRIAL, LLC**

**VERSUS**

**BUQUET & LEBLANC, INC.**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-2023-3340
HONORABLE MARILYN CARR CASTLE, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**GUY E. BRADBERRY**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Van H. Kyzar, Guy E. Bradberry, and Wilbur L. Stiles, Judges.

**REVERSED AND REMANDED.**

**John M. Madison**
**Gerald J. Asay**
**Kracht Madison Huddleston, LLP**
**5149 Bluebonnet Boulevard**
**Baton Rouge, LA 70809**
**(225) 293-4568**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
  **Hartford Fire Insurance Company**
  **Buquet & Leblanc, Inc.**

**Michael R. Dodson**
**Fishman Haygood LLP**
**201 St. Charles Avenue, 46th Floor**
**New Orleans, LA 70170-4600**
**(504) 586-5252**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
  **Patriot Construction & Equipment, LLC**

**BRADBERRY, Judge.**

Patriot Construction Equipment, LLC appeals the decision of the trial court below denying its motion for preliminary injunction against Buquet & LeBlanc, Inc. (hereinafter B&L) in this contract dispute centered on an arbitration clause in a purported contract between the parties. For the following reasons, we hereby reverse the decision of the trial court and remand for further proceedings in accordance with our decision.

B&L was a general contractor for the construction of an apartment complex in Lafayette. B&L reached out to Patriot to perform sitework and paving on the project in November of 2020. A price and scope of work were agreed to. Patriot was awarded the project in January of 2021, and mobilized April 23 of that year. Prior to that date, B&L sent Patriot the "subcontract" at issue in this litigation, which included an arbitration agreement therein. Patriot reviewed the document prior to mobilization and returned a redlined copy with suggested changes on April 19. The redlined copy was sent via email by a Patriot estimator named Paige Turner. The record, however, has nothing in it which shows Patriot's designated representative, Mickey Suire, initialed or signed the document. While Mrs. Turner was a vessel for communication between the parties, nothing indicated that she had authority to bind Patriot in any way. Again, Patriot mobilized and began work on April 23. On April 27, after work had begun, B&L President Robin Liles reviewed the redlined copy and agreed to most of the suggested input, as indicated by his initials besides the redlines. He did not provide the cost of liquidated damages, as requested by Patriot. He returned his initialed copy to Patriot that day. Again, however, Patriot's designated representative, Mickey Suire, did not initial or sign the document in any way.

Eventually B&L became unsatisfied with Patriot's work and initiated arbitration proceedings in accordance with the subcontract. Patriot objected and filed a petition for damages against B&L, as well as a Motion for Temporary Restraining Order and Preliminary Injunction seeking to prevent arbitration. The temporary restraining order was granted, but the trial court later ruled that Mrs. Turner acted with apparent authority to bind Patriot in sending the redlined copy of the agreement and denied the preliminary injunction, forcing Patriot into arbitration for the dispute. From that decision, Patriot appeals.

On appeal, Patriot asserts four assignments of error, all essentially asserting that the trial court erred in finding Mrs. Turner had apparent authority to bind Patriot and in finding that a contract had actually been formed which included an arbitration provision. We agree with those assertions.

A ruling on a preliminary injunction will not be disturbed on appeal absent a clear abuse of discretion. *Herff Jones, Inc. v. Girouard*, 07-393 (La.App. 3 Cir. 10/3/07), 966 So.2d 1127, *writs denied,* 07-2463, 07-2464 (La. 2/15/08), 976 So.2d 185. However, this broad abuse of discretion standard is "'based upon a conclusion that the trial court committed no error of law and was not manifestly erroneous or clearly wrong in making a factual finding that was necessary to the proper exercise of its discretion.'" *Rand v. City of New Orleans*, 12-348 (La.App. 4 Cir. 12/13/12), 125 So.3d 476, 479, (quoting *Yokum v. Pat O'Brien's Bar, Inc.*, 12-217, p. 7 (La.App. 4 Cir. 8/15/12), 99 So.3d 74, 80). "The determination as to whether to stay or compel arbitration is a question of law." *Lemoine Co., LLC v. Durr Heavy Constr., LLC*, 15-1997, p. 3 (La.App. 1 Cir. 10/31/16), 206 So.3d 244, 246, w*rit denied sub nom., The Lemoine Co., LLC v. Durr Heavy Constr., LLC*, 16-2100 (La. 1/13/17), 215 So.3d 247. "The standard of appellate review for questions of law is simply to

2

determine whether the trial court was legally correct or incorrect." *Arkel Constructors, Inc. v. Duplantier & Meric, Architects, L.L.C.*, 06-1950, 06-1951, p. 7 (La.App. 1 Cir. 7/25/07), 965 So.2d 455, 459.

Louisiana Code of Civil Procedure Article 3601 provides that an injunction shall issue in cases where irreparable injury, loss, or damage may result to the applicant. A party may be granted a preliminary injunction only if he establishes three elements: "(1) that the injury, loss, or damage he will suffer if the injunction is not issued may be irreparable; (2) that he is entitled to the relief sought; and (3) that he will be likely to prevail on the merits of the case." *St. Raymond v. City of New Orleans*, 99-2438, p. 3 (La.App. 4 Cir. 5/17/00), 769 So.2d 562, 564, *writs denied*, 00-2565, 00-2566 (La. 9/13/00), 767 So.2d 697.

Because of a prior ruling of this court, we will deal with the above third element first. A party is entitled to a preliminary injunction upon a prima facie showing that he will prevail on the merits. *Lake Bistineau Pres. Soc., Inc. v. Seales*, 40,583 (La.App. 2 Cir. 2/10/06), 922 So.2d 768, *writ denied*, 06-620 (La. 5/26/06), 930 So.2d 27. During the course of this litigation, a prior panel of this court granted Patriot's motion for stay of arbitration pending this court's review in the instant appeal. There, this court ruled that Patriot had satisfied the four factors warranting a stay, including "whether the movant has made a showing of likelihood of success on the merits." *Patriot Constr. & Indus., LLC v. Buquet & Leblanc, Inc.*, 23-557, p.2 (La.App. 3 Cir. 11/2/23) (unpublished opinion)[1] (quoting *New Iberia Bancorp, Inc. v. Schwing*, 95,638 p. 4 (La.App. 3 Cir. 8/23/95), 663 So.2d 104, 106).

---

[1] 2023 WL 7214727

3

"The 'law of the case' doctrine applies to *all prior rulings or decisions* of an appellate court or the supreme court in the same case, *not merely those arising from the full appeal process*." *Dodson v. Cmty. Blood Ctr. of La., Inc.*, 633 So.2d 252, 255 (La.App. 1 Cir. 1993) (emphasis ours), *writs denied sub nom.*, *Dodson v. Cmty. Blood Ctr., Inc.*, 93-3158, 93-3174 (La. 3/18/94), 634 So.2d 850, 851. *See also Brumfield v. Dyson*, 418 So.2d 21 (La.App. 1 Cir.), *writ denied*, 422 So.2d 162 (La.1982). This pertains to litigants who were parties to the case when the prior decision was rendered, as here, and who, accordingly, had their day in court. *Dodson*, 633 So.2d 252. "The reasons for the 'law of the case' doctrine is [sic] to avoid relitigation of the same issue; to promote consistency of result in the same litigation; and to promote efficiency and fairness to both parties by affording a single opportunity for the argument and decision of the matter[.]" *Id.* at 255; *Ne. Realty v. Jackson,* 36,276 (La.App. 2 Cir. 8/14/02), 824 So.2d 1264; *La. Land & Expl. Co. v. Verdin*, 95-2579 (La.App. 1 Cir. 9/27/96), 681 So.2d 63, *writ denied*, 96-2629 (La. 12/13/96), 692 So.2d 1067, *cert. denied*, 520 U.S. 1212, 117 S.Ct. 1696 (1997).

An appellate court ordinarily will not reconsider its own rulings of law on a subsequent appeal in the same case. *Ne. Realty* (citing *Glenwood Hosp., Inc. v. La. Hosp. Serv., Inc.*, 419 So.2d 1269 (La.App. 1 Cir. 1982)). "Reargument in the same case of a previously decided point will be barred where there is simply a doubt as to the correctness of the earlier ruling." *Martinez Mgmt., Inc. v. Caston*, 39,500, p. 9 (La. App. 2 Cir. 4/13/05), 900 So.2d 301, 307. "Only where there is palpable error or where, if the law of the case was applied, manifest injustice would occur, is the doctrine not applied." *Id.* (citing *Ne. Realty,* 824 So.2d 1264*; Glenwood Hosp., Inc.,* 419 So.2d 1269. Nothing in the record before this court indicates that our previous panel's finding regarding the likelihood of success on the merits was palpable error,

therefore, we will not reconsider that prior ruling of this court and consider that element established.

For the purpose of determining injunctive relief, "'[i]rreparable harm' generally means 'loss that cannot be adequately compensated in money damages or measured by a pecuniary standard.'" *Robbins v. State, Through State Land Office*, 97-671, p. 9 (La.App. 3 Cir. 12/17/97), 704 So.2d 961, 966 (quoting *Star Enter. v. State, Through Dep't of Revenue and Taxation*, 95-1980, 95-1981, 95-1982, p. 13 (La.App. 1 Cir. 6/28/96), 676 So.2d 827, 834, *writ denied*, 96-1983 (La. 3/14/97), 689 So.2d 1383), *writ denied*, 98-176 (La. 3/20/98), 715 So.2d 1214. It is clear under Louisiana law "that a party objecting to arbitration would be irreparably harmed by being forced to arbitrate 'in a proceeding not required'" by a valid contract. *S. LA Contractors, LLC v. MAPP, LLC*, 22-24, p. 8 (La.App. 1 Cir. 9/16/22), 353 So.3d 144, 150 (quoting *W.E. Parks Lumber Co., Inc. v. Ronald A. Coco, Inc.*, 297 So.2d 925, 927 (La.App. 1 Cir.), *writ denied*, 302 So.2d 23 (La.1974)), *writ denied*, 22-1612 (La. 4/25/23), 359 So.3d 989. "Arbitration is a matter of contract, and a party cannot be required to submit to arbitration any dispute to which he has not so agreed." *Lemoine*, 206 So.3d 244, 247; see also *Fluid Disposal Specialties, Inc. v. UniFirst Corp.*, 50,356, (La.App. 2 Cir. 1/13/16), 186 So.3d 210.

B&L cites *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 126 S.Ct. 1204 (2006), for the proposition that a challenge to the validity of a contract as a whole, rather than specifically to any arbitration clause within it, must go to the arbitrator, rather than the court. We disagree with this assertion, as both federal and Louisiana jurisprudence provide that the issue of the existence of an agreement to

5

arbitrate is to be decided by the courts, not an arbitrator. *Fluid Disposal*, 186 So.3d 210. As noted there:

> the Supreme Court [in *Buckeye Check Cashing*] expressly noted in a footnote that the issue of a contract's validity is different from the issue of **whether any agreement at all existed** between the alleged obligor and the obligee. The Court stated it was not considering cases including those holding that courts should decide whether the signor lacked authority to commit the alleged principal. This statement by the Supreme Court, as well as other federal and state jurisprudence, indicates that in such a situation, there would be no agreement at all between the parties, including an agreement to arbitrate and **the issue of the existence of the agreement would be decided by the court**.

*Id.* at 216-17 (emphasis ours).

In **Collins v. Prudential Insurance Co. of America**, 99-1423 (La. 1/19/00), 752 So.2d 825, the supreme court determined that before a district court can compel arbitration, it must make two preliminary determinations: "First, the trial judge must ensure that a valid arbitration agreement between the parties exists. Second, the judge must decide whether the dispute at issue falls within the scope of the agreement. State law principles govern the first question." **Collins**, 752 So.2d at 831.

Louisiana law favors arbitration. **Aguillard v. Auction Management Corp.**, 2004-2804 (La. 6/29/05), 908 So.2d 1, 7. Whether a party is obligated to arbitrate is a matter of contract and, thus, the question of who is bound by an arbitration agreement is a function of the intent of the parties, as expressed in the terms of the agreement. **Prasad v. Bullard**, 2010-291 (La. App. 5 Cir. 10/12/10), 51 So.3d 35, 39. Generally, in order to be subject to arbitral jurisdiction, the party must be a signatory to a contract containing an arbitration clause. *Id.*, 51 So.3d at 40. Not all arbitration provisions are valid under state law. **Rodriguez v. Ed's Mobile Homes of Bossier City, La.**, 2004-1082 (La. App. 3 Cir. 12/8/04), 889 So.2d 461, 463, writ denied, 2005-0083 (La. 3/18/05), 896 So.2d 1010. Rather, *the application of arbitration law presupposes the existence of a valid contract as a basis for invoking arbitration*. **George Engine Co., Inc. v. Southern Shipbuilding Corp.**, 350 So.2d 881, 884 (La. 1977); see also La. R.S. 9:4201.4. *Thus, if a contract is void ab initio because of some fatal defect in its confection, any arbitration provision contained within it is also a nullity*. **State, Through Office of Governor v. L. W. Eaton Const. Co., Inc.**, 392 So.2d 477, 480 (La. App. 1 Cir. 1980).

The requirements for a valid contract are: (1) capacity; (2) consent; (3) a lawful cause; and (4) a valid object. See La. Civ. Code arts. 1918, 1927, 1966, 1971; **Granger v. Christus Health Central**

> **Louisiana**, 2012-1892 (La. 6/28/13), 144 So.3d 736, 760-761. It is the burden of the party seeking to enforce a contract to show the contract exists. La. Civ. Code art. 1831; **FIA Card Services, N.A. v. Weaver**, 2010-1372 (La. 3/15/11), 62 So.3d 709, 719; <u>see also</u> **Kosmala v. Paul**, 569 So.2d 158, 162 (La. App. 1 Cir. 1990) ("The party seeking to enforce arbitration provisions has the burden of showing the existence of a valid contract to arbitrate.")

*S. LA Contractors, LLC*, 353 So.3d at 150-51 (italic emphasis ours). In determining whether a party is bound by an arbitration agreement, we apply ordinary contract principles. *Fluid Disposal*, 186 So.3d 210. Thus, in order to determine if Patriot is bound by an arbitration agreement, we must first determine whether they properly agreed to the subcontract containing that provision. A review of the record shows they did not.

There are several indicators in the record that the subcontract at issue was not fully finalized between the parties. First and foremost, while the trial court held that Paige Turner acted with apparent authority to bind Patriot to the subcontract, we find that ruling to be in error. As noted in *Boulos v. Morrison*, 503 So.2d 1, 3 (La.1987):

> For the doctrine of apparent authority to apply, the principal must first act to manifest the alleged agent's authority to an innocent third party. Second, the third party must rely reasonably on the manifested authority of the agent. As the Courts of Appeal have correctly held, the principal will be bound for the agent's actions if the principal has given an innocent third party a reasonable belief the agent had authority to act for the principal. *Comfort Heating & Air Conditioning, Inc. v. Brock*, 476 So.2d 927 (La.App. 2 Cir., 1985); *Byles Welding & Tractor, Inc. v. McDaniel*, 441 So.2d 48 (La.App. 3 Cir., 1983); *Bamber Contractors, Inc. v. Morrison Engineering & Contracting Company, Inc*., 385 So.2d 327 (La.App. 1 Cir., 1980). The burden of proving apparent authority is on the party relying on the mandate. *Bamber Contractors,* supra.

> A third party seeking to benefit from the doctrine of apparent authority may not blindly rely upon the assertions of an agent. He has a duty to inquire into the nature and extent of the agent's power. *Buckley v. Woodlawn Development Corp*., 233 La. 662, 98 So.2d 92 (1957); *Byles Welding,* supra*; Bamber Contractors,* supra.

It was uncontroverted at trial that Mrs. Turner did not have the authority to bind Patriot to any contract. Moreover, at no point did Patriot ever hold Mrs. Turner out as someone who could act with authority to bind the company. Mrs. Turner, known by B&L as an estimator only, merely sent an initial copy of draft revisions to B&L. B&L cannot establish a reasonable belief she had authority to act for Patriot in the manner they now assert, as Mickey Suire was known by B&L to be the person with authority to sign the contract. Likewise, his name was clearly and specifically printed in the space on the subcontract indicating he would be the one accepting the agreement. He did not, in fact, sign or otherwise indicate acceptance of the deal as being finalized.

Further, it is apparent from the record that important terms of the revisions were not completely agreed upon, including the liquidated damages provision, as noted directly by the trial court. The uncontradicted testimony of Patriot's president, Ben LeBlanc, indicated this was a major financial issue affecting Patriot. That redline item request was not initialed, even by Mr. Liles, indicating a lack of agreement on that matter. Additionally, clear terms of the subcontract revisions were not followed, indicating that the parties did not act in compliance therewith, as claimed by B&L. The very first of the changes sent by Mrs. Turner and initialed by Mr. Liles, indicating his own acceptance, dealt with the retainage rate to be applied to payments to Patriot. The initial subcontract draft sent by B&L to Patriot indicated a 10% retainage rate throughout the project. The revisions sent by Mrs. Turner indicated Patriot wanted a 5% retainage rate after 50% completion of the project. Mr. Liles indicated agreement with that rate by initialing next to the redline. However, the record is clear that the payments were actually made through February of 2022 at the 10% rate, well past the 50% completion indicated in the subcontract

initialed by Mr. Liles, indicating B&L itself was not following the terms of its own purported subcontract.

Finally, the draft subcontract sent between the parties specifically states (emphasis ours) that:

> This Agreement may not be changed, amended, altered or modified orally, or in writing or by any means whatsoever except by WRITTEN MODIFICATIONS ON THIS ACTUAL AGREEMENT **PROPERLY INITIALLED BY *BOTH PARTIES*** or a PROPERLY EXECUTED FORMAL, WRITTEN CHANGE ORDER signed by the signer of this contract. . . . This agreement specifically may not be changed, expanded, altered, modified, subjugated, or overruled in any way by anyone's signature on any delivery ticket, order confirmation, indemnification, hold harmless, work order, acknowledgement or ANY other document except a PROPERLY EXECUTED FORMAL WRITTEN CHANGE ORDER (as specified within).

While Mr. Liles did initial most of the changes proposed by Patriot, nothing in the record indicates that Mr. Suire initialed any of the changes whatsoever, as clearly required by the very document B&L now seeks to enforce.

It is clear from the record before this court that an initial contract was formed between the parties when they agreed on a price and a scope of work. Patriot began work under that agreement **prior to** B&L returning the subcontract at issue with most of its redlined changes initialed by Mr. Liles – i.e., even B&L had not agreed to the edits in the draft subcontract as marked prior to work beginning. The parties clearly began back and forth negotiations on the subcontract document which were never fully ratified, especially by anyone with authority to do so on Patriot's part. Therefore, the subcontract, including the arbitration provision, did not become binding on the parties. Patriot would thus be irreparably harmed by being forced into arbitration by a contract it did not fully agree to, is entitled to be granted its preliminary injunction, and the trial court abused its discretion in failing to do so.

9

For the foregoing reasons, we find the trial court erred manifestly in finding Paige Turner had the authority, or acted with apparent authority, to create a contract binding Patriot to arbitration. Consequently, the trial court was legally incorrect in its determination to compel arbitration and abused its discretion in denying Patriot's motion for preliminary injunction. Accordingly, the judgment of the trial court is reversed. This matter is remanded to the trial court for entry of a preliminary injunction and for further proceedings consistent with this opinion. Costs of this appeal are hereby assessed against B&L.

**REVERSED AND REMANDED.**